Common Pleas Court of Franklin County.
BRUNS ET AL. V. WHITE ET AL.
Decided June 13, 1932.

*C. M. Addison* for plaintiff.
*Jack B. Dworken,* for The Better Vision Society.
*Gilbert Bettman,* Attorney General, for board of optometry.

KING, J.

Plaintiffs have filed this petition wherein they ask equitable relief, seeking to enjoin the defendants and each of them and all persons claiming to act by and

under their authority, from enforcing against the plaintiffs certain rules and regulations adopted by the Ohio State Board of Optometry and also seeking to enjoin the defendants from proceeding upon certain charges against the plaintiffs.

The plaintiffs in their petition allege in substance that they are duly licensed to practice optometry in the state of Ohio, under an act defining optometry, etc. Plaintiffs further say they are carrying on the business of optometry in accordance with their respective certificates issued under said act, and that each of them have connections with corporations duly organized as such under the laws of the state of Ohio. That said corporations are engaged in the business of grinding, making, manufacturing, etc., lenses, frames and mountings for eyeglasses; that said corporations do not examine or treat the human eye nor the diseases thereof in any manner, or prescribe glasses to correct defects in vision.

Plaintiffs further allege that they earn their livelihood by and are dependent upon the practice of their vocation, optometry; that said business of optometry consists of the application of optical principles through technical methods in examining the human eye.

Plaintiffs said that the Board of Optometry under the law may make rules and regulations governing the practice of optometry and such other rules as may be necessary to carry out the provisions of the optometry act. That on October 3, 1927, the Board of Optometry passed the following rule:

"Rule 8—Practice must be conducted in the name as it appears on the certificate of the individual optometrist, as registered, but this rule shall not prevent a registered optometrist from accepting employment with a lawful business or legally organized corporation, lawfully organized under Section 8623-3, General Code."

Plaintiffs say that for a long time prior to and since the adoption of said rule, optometrists including plaintiffs have been connected with legally organized corporations.

Plaintiffs say further that on May 11, 1931, said Board

of Optometry and the members thereof with the assistance and active encouragement of the other defendants, adopted new rules and regulations governing the practice of optometry, and said board notified plaintiffs that, unless within a period of ten days, plaintiffs discontinued their connections with the corporations with which they were then associated, charges would be filed against them and their certificates to practice optometry revoked.

Plaintiffs further allege that the members of the Ohio State Optometric Association and said Better Vision Society are competitors in business of the plaintiff, and said defendant, Jáck B. Dworken, is their attorney, and that said defendants had prevailed upon the Board of Optometry to adopt said rules and threaten suspension of plaintiffs' certificates.

Plaintiffs allege that these defendants caused certain charges to be filed against said plaintiffs which charges are in substance as follows:

1. That he has been guilty of grossly unprofessional conduct in this to-wit:

That he has aided and abetted a corporation in the violation of law to practice optometry, well knowing that said corporation had no power or authority to do so. That he has violated Rules 5, 6, 7, 8 and 10 of the rules and regulations of the Ohio State Board of Optometry.

2. That he has been guilty of dishonest conduct in this to-wit:

Aiding and abetting a corporation to practice optometry in violation of the rules hereinbefore set forth.

3. That he has been guilty of fraud by advertising a price of spectacles or eye glasses with intent to deceive or mislead the public in this to-wit:

That he in connection with ———— a corporation, located at ————, have put in the various newspapers in the city of ————, certain advertising which is fraudulent and which has a tendency to deceive and mislead the public.

Plaintiffs further say that the action or threat of action by defendants is based on alleged violations by

plaintiffs of Section 1295-31 of the Optometry Act and Rules 5, 6, 7, 8 and 10 of the Rules and Regulations of said Board which are as follows:

5. An optometrist shall not advertise a price or prices of glasses complete, a spectacle frame or mounting, an eyeglass frame or mounting, or an opthalmic lens used in the practice of optometry, nor shall he be associated with or remain in the employ of any person who does such advertising.

6. An optometrist shall not have any professional connection with, accept employment from or lend his name to any person not duly licensed to practice optometry in the state of Ohio, and who holds himself out as offering optometric services or facilities.

7. An optometrist shall not have any professional connection with, accept employment from or lend his name to any partnership, firm, association, or corporation which holds itself out as offering optometric services or facilities. This, however, shall not prohibit employment by, or the forming of partnerships between optometrists duly licensed in the state of Ohio.

8. An optometrist shall not make any division of his fees or other charges with any person, firm, partnership, association or corporation.

9. An optometrist shall not advertise any claim which, in the opinion of the board, would have a tendency to mislead or deceive the public, or advertise "free examinations" or "examinations included" or similar words or phrases.

Plaintiffs say that all advertising which has heretofore been published, by corporations with which plaintiffs are associated, has been entirely truthful, and that none of said advertisements have been fraudulent, either with intent to deceive or mislead the public or as having a tendency to deceive or mislead the public.

Plaintiffs say that they are without adequate remedy at law and that unless the defendants are enjoined, the State Board of Optometry will proceed to suspend, cancel, or revoke plaintiffs certificates to practice optometry, solely because of the fact that plaintiffs have connections with corporations.

Plaintiffs further allege that Rules 5, 6, 7, 8 and 10 constitute an unreasonable interference with the legitimate business of optometry and with the right of contract of plaintiffs. That the enforcement of said rules and regulations constitute an interference with and denial of plaintiffs' liberty of contract and a deprivation of their property and rights secured to them by the Federal and State Constitutions; that the enforcement of said Rules and Regulations tend and are intended to create a monopoly, and to control and influence the price of optical goods to the public in violation of law; that said rules and regulations are arbitrary, unreasonable and contrary to law and are without any relation direct or remote to the general welfare, health and morals of the public.

To the petition the defendant, the Ohio State Board of Optometry, filed a demurrer on the following grounds, to-wit:

1. That the petition does not state facts which show a cause of action.

2. That the court has not jurisdiction of the subject of the action.

To the petition, the defendants, the Ohio State Optometric Association, the Better Vision Society and Jack B. Dworken filed their demurrer, and in addition to the grounds set forth in the demurrer of the Optometric Board allege that there is a misjoinder of parties defendant.

No further consideration will be given to the question of misjoinder. This branch of the demurrer was overruled by another branch of this court on the 24th of October, 1931.

The demurrers filed to the petition in the last analysis present two propositions, the solution of which determines whether plaintiffs are entitled to the relief prayed for. These propositions may be stated as follows:

1. Is a rule or regulation promulgated or passed by the State Board of Optometry, prohibiting a registered or licensed optometrist from advertising the price of optical goods, optometric services by registered optometrists, or the advertising of "free examinations" or

"examinations included," a valid and enforceable regulation?

2. Is a rule or regulation passed by the State Board of Optometry, prohibiting registered optometrists from being connected with or accepting employment from corporations such as department stores and jewelry stores which conduct optometric departments, a valid and enforceable regulation?

With reference to the first proposition, the Optometry Board on May 11, 1931, passed a rule which prohibited advertising by an optometrist of the price of glasses complete, a spectacle frame or mounting, etc. This prohibited the optometrists from advertising regardless of the truthfulness of the advertisement. The petition alleges that all advertisements which heretofore have been published in the state of Ohio by the corporations with whom plaintiffs have been associated, have been entirely truthful and that none of said advertisements have been fraudulent, either with an intent to deceive or mislead the public or as having a tendency to mislead the public. The demurrer admits these facts to be true. The rule makes no distinction between honest and fraudulent advertising, but as above stated prohibits all advertising.

Honest advertising of any product is to be encouraged; not condemned or prohibited. It enables the honest tradesman to establish himself and his business and insures to the public the best product at the lowest price. This right ought not to be interfered with unless such is necessary for the safeguarding of the welfare, safety or morals of the people. Any regulation either by the General Assembly or an administrative board in the conduct of one's business or his right to earn a living which does not directly relate to the public safety, health or morals, is arbitrary and unreasonable and consequently unenforceable.

Such a regulation clearly is not responsive to any need or demand of the public. On the contrary such a regulation, if permitted to stand, will destroy competition, and will result in price fixing and monopoly.

Rules 5 and 10 with reference to advertising are not only arbitrary and unreasonable but contrary to the pro-

visions of Section 1295-31 General Code, which sanctions and approves advertising. The provisions of said section are as follows:

"The Board * * * may cancel, revoke or suspend the operation of any certificate by it granted to any person * * * guilty of fraudulently advertising a price of spectacles or eyeglasses by card, circulars, statements, or otherwise with intent to deceive or mislead the public."

The provisions of this act clearly permit advertising which is honest, and prohibits fraudulent advertising made with intent to deceive or mislead the public.

The board has no authority or power to pass any rule or regulation which modifies or qualifies the provisions of this statute, or limit the privilege of advertising granted optometrists by the plain meaning of its terms.

That the General Assembly intended to prohibit fraudulent advertising only, and not advertisements which spoke the truth, is evidenced by the fact that at the last session of the General Assembly an act was introduced known as the Eickenberry Bill, which act sought to amend Section 1295-31, General Code, by eliminating the word "fraudulently" therefrom, and by substituting the word "tending" to deceive or mislead the public for the words "with intent" to deceive or mislead the public. By the terms of this proposed legislation, advertising which tended to deceive or mislead the public regardless of fraud or actual intent, permitted the revocation of an optometrist's license. The General Assembly refused to extend the limits of its provisions with reference to advertising and defeated the bill. In spite of the refusal of the General Assembly to so extend the provisions of the statute the State Board passed rules and regulations contrary to the express provisions of the statute and the will of the General Assembly.

Rules 5 and 10 disclose that fraud as provided by the statute has been eliminated and ignored by the board. This usurpation of legislative power on the part of the board is unwarranted and cannot be approved.

Section 1295-31 provides a rule of conduct to be observed by optometrists in the matter of advertising. Rules 5 and 10 passed by the board provides no such

standard as rule of conduct, but leaves the question as to what tends to deceive or mislead the public wholly to the whims or caprice of the board. An individual has the right to know in advance what conduct on his part is prohibited and will result in the revocation of a right or privilege previously granted, and the standard of conduct to which he is to conform must be definite and certain. The rule promulgated by the board is not only indefinite and (contrary to the statute), but permits the fixing of as many standards or rules of conduct as may be dictated by the notions and whims of various members of the board.

Such action on the part of the board is autocratic. No good purpose, in our opinion, is subserved by the enactment of such rules or regulations. The ethics of the calling in which the optometrists are engaged, in our opinion are not violated by honest and truthful advertising. However, the statute positively permits advertising which is not fraudulent and which is not done with intent to deceive or mislead the public.

In conclusion, upon this branch of the question, in our opinion the rules promulgated by the defendants are arbitrary and unreasonable, having no relation to the public safety, morals, health or welfare, are contrary to provisions of Section 1295-31, and are therefore unenforceable.

Coming now to the consideration of the second proposition namely, is a regulation of the Board of Optometry prohibiting a registered or licensed optometrist from accepting employment from, or being connected with, corporations or department stores a valid and enforceable regulation.

The Board of Optometry on May 11, 1931, passed rules 6, 7 and 8 which were fully set forth in the petition and which rules in substance prohibit any optometrist from having any connection with or accepting employment from any partnership, firm, association or corporation which holds itself out as offering optometric services or facilities, etc.

It must be borne in mind in the consideration of this issue that department stores throughout the state have

for many years conducted in connection with their business, optometric departments exclusively in charge of licensed optometrists, and throughout these years it has been expressly sanctioned by the Board of Optometry, and not prohibited by any provision of law, nor was it questioned by the Board of Optometry until the recent enactment of rules 6, 7 and 8. These rules affect approximately fifty optometrists who have for a great many years prosecuted their calling in a manner now for the first time sought to be prohibited by the Board.

Plaintiffs in their petition allege with reference to this question in substance that plaintiffs individually are carrying on the business of optometry in accordance with their certificate issued under said act, and that each of them have connections with corporations; that said corporations operate stores or departments engaged in the business of grinding, manufacturing, etc., eyeglasses, but that said corporations do not examine or treat the human eye nor the diseases thereof in any manner nor prescribe glasses to correct defects of vision. That plaintiffs earn their livelihood by and are dependent upon the vocation of optometry. It will be observed from the allegations of the petition that the examining or treating of the eye and the prescribing of eye glasses to correct the defects of vision are done only by the duly licensed optometrists in charge of said optometry departments. These plaintiffs and others similarly situated have been for years earning a livelihood in the prosecution of their calling in connection with these corporations. Great sums of money have been expended in building up the business with which to render service to the public and in establishing good will. This practice now the subject of complaint has been expressly sanctioned heretofore by Rule 8 passed by the Board of Optometry, which rule provided as follows:

"Rule 8. Practice must be conducted in the name as it appears on the certificate of the individual optometrist as registered, but this rule shall not prevent a registered optometrist from accepting employment with a lawful business or legally organized corporation lawfully organized under Section 8623-3, General Code."

This rule was passed by the board, October 3, 1927, and for a long time prior to and since the adoption of said rule optometrists including plaintiffs have accepted employment and been connected with legally organized corporations. One naturally inquires what has caused the change in judgment on the part of the board with reference to such practice. If such practice was proper prior to and on October 3, 1927, when such procedure was expressly sanctioned by the board, what circumstances or conditions have rendered it improper necessitating a sudden change of the rule, thereby causing a great number of duly licensed and registered optometrists to sever connections which they have spent much time and effort in establishing.

The board promulgated Rules 5, 6, 7, 8 and 10 which declare in effect that the violations of any one of these rules constitute unprofessional conduct for which the board could revoke the license of such optometrist.

Section 1295-31 specifically enumerates the grounds for which a license may be revoked and the board is powerless to modify or enlarge upon the specific grounds enumerated in the statute. The board is without power to define the term "Unprofessional conduct" to conform to its own opinion of what such term should comprehend.

The Legislature may not arbitrarily and unreasonably regulate or restrict the conduct of private enterprises or business. Restrictions or regulations imposed by the General Assembly upon the conduct of business must bear a direct relationship to the health, safety and welfare of the people. Likewise the Administrative Board is without power to impose arbitrary and unreasonable restrictions. It is difficult to see how these rules promulgated by the board have any relation to the public health, safety or welfare. The petition alleges and the demurrer admits that the essential part of the work, that in which the public is directly interested or concerned, namely, the examining of the eyes and the prescribing of the correct type of eyeglasses, is done by duly licensed and registered optometrists. The actual optometric work in these department stores is performed by those who are qualified.

What difference does it make so far as the health, safety and physical welfare of the people are concerned in the adjustment of eyeglasses, whether they go to a department store or to a room occupied by an individual, so long as such optometric work is performed by an individual competent and qualified under the law to perform such services. For a number of years the Optometry Board failed to see any difference, and as above stated, expressly favored and sanctioned it.

That the board is without power to define "unprofessional conduct" is indicated by the fact that the General Assembly in the Eckenberry Bill, *supra,* refused to adopt after the words "grossly unprofessional conduct" in Section 1295-31 the clause "as may be defined by the rules of the board under authority of Section 1295-24." The defeat of this amendment clearly discloses that the General Assembly did not intend to give the board the unlimited control of the causes for revocation of licenses.

What constitutes unprofessional conduct is not granted the board to determine, regardless of the statutory provisions. With reference to this proposition the court in the case of *Czarra* v. *Board of Medical Supervisors,* 25 Appeal Cases, D. C. 443 in construing a statute similar to the Ohio statute said:

"The statute itself should indicate the facts which constitute unprofessional or dishonorable conduct and not leave them to be ascertained or settled by either medical boards or the courts."

"Unprofessional conduct or dishonorable conduct for which the statute authorizes the revocation of a license that has been regularly obtained is not defined by the common law, and the words have no common or generally accepted signification. * * * As has been said by the Supreme Court of the United States, in a case involving the same principle, the question must be reduced to one of fact as contra-distinguished from mere opinion."

As above stated the unreasonable and arbitrary imposition of restrictions by either a General Assembly or an Administrative Board upon the conduct of a lawful business, enterprise or calling is contrary to our law and institutions and will not be tolerated.

414

As is well said in the case of *Yeck Wo* v. *Hopkins,* 118 U. S., 356:

"When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power. * * * For the very idea that one man may be compelled to hold his life or the means of living on any material right essential to the enjoyment of life the mere will of another seems to be intolerance in any country where freedom prevails, as being the essence of slavery itself."

We conclude with reference to the second proposition that the rules promulgated by the board with reference to the conduct of the business of optometry by licensed optometrists in connection with lawful corporations is arbitrary and unreasonable and consequently void.

It is the contention of defendants that plaintiffs have an adequate remedy at law, and with this we cannot agree. A revocation of their license would necessarily sustain to them irreparable loss.

For the foregoing reasons let the demurrers be overruled.